**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION**

**DENVER LEE HEBERT**　　　　　　　　　　　　　　　　　　　　　　**PLAINTIFF**
**ADC #140854**

**V.**　　　　　　　　　　**CASE NO. 3:15-CV-00393-JM-BD**

**CRAIGHEAD COUNTY DETENTION
CENTER, et al.**　　　　　　　　　　　　　　　　　　　　　　　　　　　**DEFENDANTS**

**RECOMMENDED DISPOSITION**

**I.**　　**Procedure for Filing Objections**

This Recommended Disposition ("Recommendation") has been sent to Judge James M. Moody Jr.  Written objections may be filed by any party in response to this Recommendation.  If you file objections, they must be specific and must include the factual or legal basis for your objection.  Your objections must be received in the office of the United States District Court Clerk within fourteen (14) days of this Recommendation.

If no objections are filed, Judge Moody can adopt this Recommendation without independently reviewing the record.  By not objecting, you may also waive any right to appeal questions of fact.

**II.**　　**Background**

Denver Lee Hebert, an Arkansas Department of Correction inmate formerly housed at the Craighead County Detention Center ("CCDC"), filed this lawsuit claiming unconstitutional conditions at the CCDC.  Defendants Hall, Boyd, Foster, and Webb

("CCDC Defendants"), have moved for summary judgment (#28) on Mr. Hebert's claims regarding black mold at CCDC. Defendants Arthur Bently, M.D. and Tracey Reece, LPN, have also moved for summary judgment (#33) on Mr. Hebert's claims that they were deliberately indifferent to his cough and breathing problems and that they gave him acetaminophen, in spite of his history of liver problems. (#1, #5)

Mr. Hebert has not responded to either motion. Based on the undisputed evidence presented, Defendants' motions for summary judgment (#28, #33) should be granted, and Mr. Hebert's claims should be dismissed, with prejudice.

## III. Undisputed Facts

Defendants have provided affidavits and medical records supporting their statements of undisputed facts. (#30-1, #30-2) The CCDC Defendants provided the affidavit of the assistant jail administrator for the CCDC, Todd Harrell, who states: detainees clean CCDC showers once a week; the jail staff cleans all touchable surfaces with liquid cleaner every other night; and cleaning supplies are available daily to the detainees for use in their cells and common areas.

Mr. Harrell testifies that, after detainees informed jail staff about presence of mold in living areas, Lieutenant Mike Miller, CCDC's maintenance manager, led a full inspection of the living areas, including duct work and air conditioning. (#30-1 at 2) There was no black mold found in the inspection. (*Id.*) According to Mr. Miller's

affidavit, mildew was found in the air conditioning units during the inspection, and it was cleaned upon discovery. (#30-2 at 1)

Following the CCDC's on-site inspection, representatives of the Arkansas Criminal Detention Facilities Review Committee inspected the CCDC and found no evidence of violations, including a specific finding regarding lack of black mold. (#30-1 at 2)

Mr. Hebert's medication administration record indicates that he took two 500-milligram tablets of acetaminophen (Tylenol) two times per day for six days in November, 2015, without reporting a problem. (#34-2)

On December 9, 2015, Mr. Hebert complained of congestion and cough and was examined by Defendant Reece, a nurse. (#34-1) According to his medical records, Mr. Hebert did not tell her about any liver condition that would indicate that he should not take acetaminophen. After that visit, Ms. Reece called Dr. Bentley, who prescribed Dilotab II, two tablets, which contain acetaminophen. (*Id.*)

Mr. Hebert was given Dilotab II beginning on the afternoon of December 9, 2015, and the medication was stopped after the morning dose on December 16, 2015. (#34-3) During that time, however, Mr. Hebert refused the medication from December 13, 2015, until it was discontinued on December 16, 2015. (*Id.*, #34-4)

Medical staff examined Mr. Hebert again on December 22, 2015. Mr. Hebert complained of coughing and congestion that had persisted for three weeks. At that time,

he reported that he had refused the Dilotabs because of liver problems. (#34-5) The nurse consulted Defendant Bentley, but no new orders were entered at that time. (*Id*.) She noted in Mr. Hebert's medical chart that he should not be prescribed Tylenol. (*Id*.)

Defendant Reece examined Mr. Hebert again on December 26, 2015. (#34-6) At that appointment he complained again of cough and congestion. Defendant Reece noted that he could not take Tylenol. (*Id*.) She consulted Dr. Bentley, who prescribed CTM[1] daily for seven days. (*Id*.) Mr. Hebert received CTM daily through the end of December, 2015. (#34-3)

Mr. Hebert was treated by medical staff for a cough and cold on January 7, 2016. He complained of coughing up black, thin mucus. On examination, the nurse noted nasal congestion with clear drainage; his lungs and chest were within normal limits; and he was calm, pleasant, and pain-free. (#34-7) Dr. Bentley ordered daily re-checks of Mr. Hebert's blood pressure. (*Id*.)

On January 13, 2016, Mr. Hebert requested CTM for sinus congestion at an appointment with medical staff. (#34-8) Dr. Bentley prescribed CTM, which Mr. Hebert received from January 13 through January 18 as prescribed. (#34-9)

IV.  **Discussion**

A.  Standard

---

[1] CTM does not contain acetaminophen.

Summary judgment is proper when the facts important to the outcome of a lawsuit are not in dispute, and the moving party is entitled to judgment without the need for a trial. FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

B.  Conditions of Confinement

In his complaint, Mr. Hebert claims the CCDC Defendants violated his constitutional rights by housing him in a cell with black mold and, as a result, he suffered health problems. (#1, #5) As a pre-trial detainee, Mr. Hebert's claims are analyzed under the fourteenth amendment's due process clause. *Bell v. Wolfish*, 441 U.S. 520, 535 n. 16, 99 S.Ct. 1861 (1979). CCDC Defendants are liable for violating Mr. Hebert's due process rights only if his conditions of confinement were such that they deprived him of the "minimal civilized measures of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392 (1981). Mr. Hebert must show that jail officials were deliberately indifferent to "an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

Here, Mr. Hebert fails to provide any evidence from which the Court could conclude the CCDC was 'deliberately indifferent' to "an excessive risk to inmate health or safety." *Id.* at 834. As noted, the affidavits of Todd Harrell and Mike Miller contradict Mr. Hebert's claim of black mold at the CCDC. When CCDC officials

received inmate complaints about the possibility of black mold, they performed a complete on-site inspection but did not find any black mold.

Mr. Hebert has not come forward with any evidence to indicate that there was black mold at the CCDC or that he was harmed as a result of exposure to black mold. Accordingly, the CCDC Defendants' motion for summary judgment on Mr. Hebert's conditions of confinement claims should be granted.

C. Deliberate Indifference

Mr. Hebert claims Defendants Bentley and Reece were deliberately indifferent to his serious medical needs when they failed to treat the cough and breathing problems allegedly caused by his exposure to black mold. He also faults them for giving him medication that contained acetaminophen. (#1, #5)

"Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *McRaven v. Sanders*, 577 F.3d 974, 979 (8th Cir. 2009) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). To state a claim for deliberate indifference, Mr. Hebert must show "more than negligence, more even than gross negligence." *Fourte v. Faulkner County, Ark.*, 746 F.3d 384, 387 (8th Cir. 2014) (quoting *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)). Mr. Hebert must show that the Defendants' actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Dulany v. Carnahan*, 132 F.3d 1234, 1240-1241 (8th Cir. 1997) (citing *Smith v.

*Jenkins*, 919 F.2d 90, 93 (8th Cir. 1990)); see also *Allard v. Baldwin*, 779 F.3d 768, 771-72 (8th Cir. 2015) (to prevail on Eighth Amendment claim, inmate must show that defendants' mental state was akin to criminal recklessness).

Here, Mr. Hebert has failed to present any evidence that would lead a reasonable fact-finder to conclude that Defendants Bentley and Reece intentionally mistreated his medical condition. Defendants, as well as other medical staff, treated Mr. Hebert's complaints of a cough and breathing problems on December 9, 22, and 26 of 2015, as well as on January 7 and 13 of 2016. On three occasions, Mr. Hebert was prescribed medication to treat his cough and congestion.

As to Mr. Hebert's claim that Defendants Bentley and Reece were deliberately indifferent in prescribing medication with acetaminophen, Mr. Hebert has not come forward with any evidence that either Defendant Bentley or Defendant Reece knew, or had reason to know, of his liver condition prior to his disclosure to medical personnel on December 22, 2015. Indeed, Mr. Hebert did not complain when taking Tylenol for six days in November, 2015. Moreover, he has not established that he suffered any harm as a result of briefly taking medication with acetaminophen during his stay at CCDC.

There is no evidence to support Mr. Hebert's deliberate indifference claims, and Defendants Bentley and Reece are entitled to summary judgment on Mr. Hebert's claims against them.

D.   Official Capacity Claims

Mr. Hebert's claims against Defendants in their official capacities fail for two reasons. First, Defendants are employees of Craighead County, Arkansas. This means that Mr. Hebert's official capacity claims against them are, in effect, claims against Craighead County. *Parrish v. Ball*, 594 F.3d 993, 997 (8th Cir. 2010). Local governments such as Craighead County are not liable under § 1983 for injuries inflicted solely by their employees or agents. *Monell v. New York Dep't. of Soc. Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018 (1978). Rather, a county is liable for the acts of its employee only when the employee is carrying out a county policy or custom.[2] *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009) (citation omitted). Mr. Hebert has not identified or presented evidence of a Craighead County policy or custom that caused him injury.

Furthermore, because Mr. Hebert failed in his attempt to establish that Defendants violated his constitutional rights in their individual capacities, his official capacity claims would fail even if a County could be held liable for the conduct of its employees.

---

[2] For purposes of § 1983, a policy is a "deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Marksmeier v. Davie*, 622 F.3d 896, 902 (8th Cir. 2010). To establish a custom, a plaintiff must prove that the county engaged in a continuing pattern of unconstitutional misconduct, not just a single unconstitutional act. *Id*. at 902–903.

## V. Conclusion

Based on the undisputed evidence in the record, Defendants' motions for summary judgment (#28, #33) should be GRANTED and the case DISMISSED, with prejudice.

DATED this 1st day of December, 2016.

_____
UNITED STATES MAGISTRATE JUDGE